UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 10-60931-Civ-Martinez/Brown

JEFFREY D. BIANCHI,

    Plaintiff,
v.

P & B CAPITAL GROUP, LLC,

    Defendant.
_____/

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

    Plaintiff, Jeffrey D. Bianchi, files his Opposition to Defendant's Motion for Partial Summary Judgment (DE 22) and moves this Court to deny Defendant, P & B Capital Group, LLC's, motion, and, in support thereof, states as follows:

    1.    The purpose of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA") is, *inter alia*, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged. 15 U.S.C. §1692(e). By engaging in the abusive practices alleged in this case, Defendant gained a competitive advantage over other debt collectors who comply with the law, an impermissible result. In an effort to save money and collect debts more cheaply and gain an advantage over its competitors, Defendant engaged in the use of a risky technology which it *knows* does not always work as intended and Defendant is now being called to account for its actions, which it undertook solely for the purpose of saving money on operating expenses in the collection of debts.

2. Defendant is not entitled to Summary Judgment because Defendant's bona fide error defense involves a question of fact, because Defendant relies on erroneous interpretations of the statutes to draw its conclusions, and because the issue of whether Defendant's conduct is harassing is also a question of fact. As a procedural issue, Defendant has failed to comply with Local Rule by setting out its undisputed statement of facts in separate numbered paragraphs. Neither Plaintiff nor the Court should have to wade through Defendant's narrative of the facts.

3. Defendant is not entitled to Summary Judgment on Count I of Plaintiff's Complaint because the bona fide error defense is not available to this Defendant and even if it is, it involves questions of fact that are appropriately left to the jury. Defendant spends an inordinate amount of time in its motion detailing its extensive procedures to ensure employee compliance with FDCPA policies, yet states many times over that no employee of P&B Capital ever spoke with Plaintiff about the alleged debt. (See Defendant's Motion for Partial Summary Judgment, at page 3 (DE 22), see Declaration of Sean J. Welch, at ¶ 10 (DE 22-4)), rendering the majority of Defendant's argument as fluff. In the instant case, Defendant's policies and procedures as they apply to its live collectors are not relevant to Defendant's bona fide error defense, as Defendant's live collectors have no bearing on this suit and no relationship with Plaintiff, as there was never any communication between Plaintiff and Defendant's collectors. The maintenance of Defendant's policies with regard to its use of the outside dialing service "TCN" *are* what is relevant, and also what is lacking, not only from Defendant's argument, but from its actual business practices as well.

4.      Defendant has not met all of the elements of the bona fide error defense and cannot. In addition, whether or not Defendant's actions were in good faith is a jury question. In *Edwards v Niagra Credit Solutions* 2009 U.S. App. LEXIS 22500, at page 4 (11th Cir. 2009) the Court held that a defendant debt collector knowingly left a pre-recorded telephone message and thus could not establish the bona fide error defense because the conduct was intentional – a required element of the bona fide error defense is that the conduct be *unintentional*. In this case, the Defendant admits that it left the complained-of message, admits that the message did not disclose its name, or that it was a debt collector, or the purpose of the message, and that it knowingly left that message. Defendant contends that it intended to leave the required disclosures later in the discourse with the consumer, yet it admits that its system is "nearly without fail." If the system is nearly without fail, then Defendant knows that on some occasions, the systems does fail, and this Plaintiff is the person against whom Defendant's system failed and who was thus deprived of the disclosures due to him by law.

5.      In addition to Defendant's conduct being intentional and thus not subject to the bona fide error defense, Defendant fails on two other prongs of the defense: the "bona fide" and "procedural" prongs. Defendant contends in its motion that "whether or not an error has occurred in good faith depends on the procedures in place to prevent such an error" (DE 22). Defendant states that if the procedures are reasonably implemented and maintained to prevent error, then the court must conclude that the error was bona fide. Defendant is wrong. Defendant is required to meet the good faith element of the bona fide error defense in order to prevail on the defense, and it cannot. Defendant makes a lot

3

of noise in its argument about how it only violated the law a single time by making a single telephone call to Plaintiff. But what Defendant does not mention is the reason Defendant made only one phone call to the Plaintiff is because Defendant purchased an FDCPA litigant scrub, regarding consumers who have previously sued debt collectors and as soon as that information came into Defendant's consciousness, it immediately ceased telephoning Jeffrey D. Bianchi because Mr. Bianchi has previously sued other debt collectors for violating the FDCPA, including this exact same Defendant in its previous incarnation under a different corporate name (See Deposition of Sean Welch, "Welch Deposition," filed contemporaneously with this response, page 18 lines 17 through page 20 line 23). This excludes Defendant from meeting the good faith element of the bona fide error defense. Defendant knows it violates the law and admits that it violates the law and seeks to limit its legal liability by eliminating consumers from the scope of its debt collection business by identifying them through the WebRecon LLC service and then stopping all collection activities against those particular consumers (Welch Deposition, page 19 lines 3 through page 20 line 4). This is not an effort to comply with the FDCPA, this is an effort to avoid compliance with the FDCPA and eliminate lawsuits by simply avoiding consumers who are known to sue debt collectors. This excludes Defendant from meeting the good faith element of the bona fide error defense, or, at a minimum, creates a jury question.

      6.    Defendant states that it, in conjunction with TCN, it maintains procedures "which have been reasonably adapted to prevent the specific alleged error at issue, i.e. the erroneous recognition by the Dialer of live person instead of a voicemail. These

procedures include programming the Dialer not to leave messages on voicemail or answering machines and to hang up if the call is not answered by a live person" (DE 22). Defendant also maintains that TCN performs daily tests on the Dialer to determine whether the Dialer is accurately making the appropriate distinctions between live person and voicemail, and that the performance of the Dialer has verified the Dialer's ability to "make this distinction nearly without fail". Defendant, however, testified at its deposition that it has no policies in place to ensure that TCN is maintaining these procedures; it only assumes that TCN is maintaining these procedures based upon their agreement with TCN (Welch Deposition, page 30 lines 7-15). Defendant assumes that TCN will follow the instructions it is given and only play messages for live persons (Welch Deposition, page 13 lines 1-16). Defendant further states that it assumes there are past communications which ensure this agreement, and that if this agreement were in writing, it would be very easy to obtain a copy (Welch Deposition, page 14 lines 4-9 and lines 13-16). Defendant is not certain that it ever provided its FDCPA compliance manual to TCN (Welch Deposition, page 29 lines 2-6), and Defendant's only procedure in place regarding TCN's compliance is Defendant's reliance on TCN's statement of the services that it provides (Welch Deposition, page 30 lines 7-15). Defendant has no assurances other than TCN's word that the system is functioning properly and takes no other steps to ensure TCN's compliance (Welch Deposition, page 31 line 9 through page 32 line 4). Instead of producing a written agreement with TCN regarding these policies, which, according to Defendant, may or may not exist, Defendant produces the affidavit of Liahona Tiatia, which parrots the affidavit of Sean Welch, and provides, as the only proof of maintenance

5

of procedures, that daily tests are run to ensure that the Dialer is working correctly. As to the accuracy of the Dialer's ability, Ms. Tiatia can only testify that the Dialer's ability to distinguish between a live person and an answering machine is "nearly without fail." "Nearly without fail" is not a quantitative term. How many instances, or in what percentage of instances, is "nearly without fail"? Is 1 time out of every 20 times "nearly without fail"? Is it more like 1 time out of every 50 times? This is a jury question. "Nearly without fail" gives no real indication of how accurate the dialer is, gives no indication of how accurate the test is, and does not lend confidence to Defendant's assertions that it has in place and maintains reasonable procedures to avoid violations of the FDCPA. Instead it appears that Defendant passes off numerous accounts to TCN to further its collection efforts, and does not monitor this process in the slightest. Defendant relies upon TCN to maintain its procedures – for which there appears to be only a verbal agreement – that TCN not leave the complained-of disclosure on a voicemail or answering machine. Defendant appears to be satisfied with the "nearly without fail" accuracy. It is not a reasonable procedure to utilize a completely computerized dialing system, which makes occasional, however infrequent mistakes, and for Defendant to not monitor or maintain the system's procedures or output in the slightest. If Defendant's system is "nearly without fail" then Defendant is acknowledging that in some instances, such as occurred to Plaintiff, the system does fail. And if the system does fail, then it is not a reasonable procedure designed to prevent the error which did occur from occurring. To leave its outside dialing service to do all the heavy lifting and to just assume that policies are being followed to the letter of the law is not grounds for a bona fide error

defense. The FDCPA does not allow debt collectors to violate the law *some* of the time. It is a strict liability statute with a bona fide error defense. A violation did occur, one violation is sufficient to establish liability, and Defendant has not met the requirements of the bona fide error defense as a matter of law, and at a minimum the bona fide error defense is a jury question.

7. Defendant is not entitled to Summary Judgment on Count II of Plaintiff's Complaint because Defendant relies on an erroneous interpretation of the statute to support its conclusion. Defendant contends that Plaintiff's §1692d(6) claim in Count II of the Complaint is insufficient because there was only one wrongful phone call, and cites a decision in *Sampaio v IC Systems*, 09-cv-21689-AJ which granted defendant's motion for summary judgment. Defendant cites the Supreme Court case *Connecticut Nat'l Bank v Germain* to further iterate its point, that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Plaintiff agrees with this statement. Defendant's reading of the statute is that it prohibits only multiple calls, and that a single call cannot constitute a violation. Plaintiff cannot find *that* language in the text of §1692d(6). The statute does not specifically say that one call is insufficient to establish a violation of the FDCPA. If the statute meant to limit violations to two or more calls, that language would be specifically outlined in the statute. The interpretation that Defendant is advancing is that the statute allows for a freebie. You get one free pass for the first call, and then if there are subsequent violative calls, you are in violation of §1692d(6). That was not the intention of Congress. Congress's intention was that the placement of telephone calls, any telephone calls, even a single one, without meaningful

disclosure of the caller's identity, constitutes a violation. There is absolutely no reason to believe that Congress thought that a debt collector could fail to identify itself in its first call to a consumer and not be liable but become liable when it made a second violative call. Defendant's interpretation and the ruling in *Sampaio* are erroneous interpretations of the statute and are not binding on the Eleventh Circuit. The Eleventh Circuit's most recent pronouncement on the FDCPA specifically states that "the Act does not guarantee a debt collector the right to leave answering machine messages." *Edwards v Niagra Credit Solutions* 2009 U.S. App. LEXIS 22500, at page 4 (11th Cir. 2009). Defendant does not have a right to leave unattended telephone messages on consumers' answering machines or voicemails, and does so at its peril.

8.      With regard to Count III of Plaintiff's Complaint, the violation of §1692d(5), Plaintiff withdraws this claim.

9.      Defendant is not entitled to Summary Judgment on Count IV of Plaintiff's Complaint because Defendant's contentions are based upon erroneous interpretations of what is and is not harassing conduct. This is a jury question, not a matter for summary judgment. Further, Defendant's representations about Plaintiff's intentions are false. Plaintiff does not intend to construct a relationship between the FDCPA and the Telephone Consumer Protection Act, 47 U.S.C §227, *et seq*. ("TCPA") in which a violation of one would be a violation of the other. Plaintiff merely asserts that the same conduct can and does separately support a violation of both the FDCPA and TCPA. Defendant's phone call to Plaintiff, which used an automatic telephone dialing system, to which Plaintiff had not consented, violates the TCPA and it *also* violates the FDCPA, and

8

the only other Court to consider this issue found in favor of the plaintiff. The examples of harassing conduct listed in §1692d are not a comprehensive list of the only conduct which violates the statute. Defendant states that there is no legal support for Plaintiff's position. Defendant is wrong. A recent Eleventh Circuit opinion, *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. Fla. 2010), and a recent Southern District ruling, support Plaintiff's argument. In the Southern District case, United States District Judge James I. Cohn held:

> Defendants argue here by analogy that Plaintiff cannot maintain an FDCPA claim by reciting a violation of the TCPA. In her response, Plaintiff relies upon a recent Eleventh Circuit opinion, LeBlanc v. Unifund CCR, 601 F.3d 1185 (11th Cir. 2010), which held that a violation of the FCCPA for failure to register as an out of state consumer collection agency may support a federal cause of action under 15 U.S.C. § 1692e(5) of the FDCPA against a collector for threatening to take an action it could not legally take. Plaintiff argues that in the present case she seeks to support a cause of action under §1692d with harassing conduct that also supports a TCPA claim. Plaintiff argues that the FDCPA and TCPA both seek to protect the consumer, just as the Eleventh Circuit found similar congruence between the FDCPA and FCCPA. Plaintiff also asserts that as in LeBlanc, it is not seeking a per se rule that one violation equals the other, but rather that the same conduct can separately support a violation of both the FDCPA and TCCPA.
> …
> This Court agrees with Plaintiff. Section 1692d of the FDCPA lists in its nonexclusive examples of violations: "5) causing a telephone to ring . . . repeatedly or continuously with intent to annoy, abuse or harass any person at the called number" [or] 6) "the placement of telephone calls without meaningful disclosure of the caller's identity." The allegations in the Complaint in this action at ¶¶ 22 and 39 are sufficient under Twombly and Iqbal to constitute a violation of 15 U.S.C. § 1692d, even if they also constitute a violation of the TCPA. Each element of the particular statutory claim must be met, regardless of whether the same facts support multiple claims. Plaintiff has therefore met the pleading burden in this case as to Count IV.

Order Denying Defendants' Motion to Dismiss Count IV (DE 19), <u>Clarke, Kerryjoe N.. v Weltman, Weinberg & Reis, Co., et al.,</u> Case No.: 10-60600-Civ-Cohn/Seltzer (S.D. Fla July 15, 2010)

Thus, Defendant's conduct, which violates the TCPA *also* violates the FDCPA in that Defendant placed a call to Plaintiff using an automatic telephone dialing system to which Plaintiff had not consented, and thereby ran afoul of the privacy protections of both Acts. Whether or not Defendant's conduct is such that a reasonable jury could find it harassing, oppressing, or abusive is not a matter of law, but a jury question, and is not somehow an invalid cause of action simply because the same conduct violates both the FDCPA and the TCPA.

10.   Defendant is not entitled to Summary Judgment on Count V of Plaintiff's Complaint because Defendant *has* asserted that it has the right to communicate with the consumer in a manner which violates the law, or in terms of the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq*. ("FCCPA"), has "assert[ed] the existence of some legal right when such person knows that the right does not exist". Defendant states that, through its current policies and procedures, the Dialer is used for the purpose of connecting calls between live persons and employees of P&B (See Declaration of Sean J. Welch at ¶ 7, DE 22-4). If the call is unanswered or goes to voicemail, the Dialer is supposed to drop the call. However, if the call is answered by what the Dialer detects to be a live person, the complained-of phone message is played. Nothing in Defendant's procedure changes that its procedures violate the law – just because the message was left accidentally on a voicemail instead of played to a live person does not change the content of the message or the fact that it violates the law. Had

the disclosure been played in Plaintiff's ear and not on his voicemail machine, the communication would still violate both the FDCPA and the FCCPA. Plaintiff did listen to the message after it was left, and he thus received a communication that violated the law. The message played for the consumer does not disclose that Defendant is a debt collector, does not disclose Defendant's name, and does not disclose the purpose of Defendant's communication, all in violation of the FDCPA. Defendant acknowledges this fact (Welch Deposition, page 24 line 22 through page 25 line 7). Had Plaintiff heard the message and then simply hung up the phone, the situation would be no different, as Plaintiff still would *not* have received the disclosure due to him by law. Defendant had, at the time it was collecting Plaintiff's debt, a written policy in place to use "Foti-complaint messages in all communications with consumers" and to disclosure that it is a debt collector in all telephonic communications with consumers (Welch Deposition, page 28 line 16 through page 29 line 7). Defendant, at the time it was collecting Plaintiff's debt, knew that it was required to comply with Florida state law (Welch Deposition, page 27 lines 8-15). The fact is Defendant has these procedures in place because it has a thorough understanding of the laws in its grasp, as Mr. Welch testified at its deposition. Defendant maintains over and over again that it has extensive policies and procedures in place to ensure compliance with the FDCPA, yet, engages in a practice of communicating with consumers which violates the FDCPA and does *not* guarantee that the consumer will receive the disclosure he is entitled to by law. This alone is a sufficient reason to deny Defendant's motion. Defendant's reading of the statute is little more than a semantics distinction. Defendant knew it was violating the FDCPA by leaving deficient messages, and did so anyway, that

11

is the assertion of a right to collect a debt using a technique which Defendant knows is prohibited by the FDCPA and that conduct is a violation of the FCCPA. The violative act is itself the assertion of the right to take the action. Defendant's references to *Ortiz v Accounts Receivable Management, Inc.* and *Pollock v Bay Area Credit Service, LLC* are inapplicable to the circumstances in this case. In *Ortiz*, the Court found that Plaintiff's Complaint did not succeed in making the allegation that a legal right which did not exist was being asserted. The Court's ruling was specific to that case and not a statement about the statute in general. The Court's ruling is hardly a thorough analysis. Again here Defendant makes an interpretation based on unrelated rulings and erroneous interpretations of the statute which are not binding on the Eleventh Circuit. Neither ruling Defendant cites is binding on the Eleventh Circuit. The scope of the FCCPA may be narrower than the FDCPA, however, Defendant construes this to mean another free-pass scenario. Defendant contends that because the FCCPA does not specifically require the disclosures without their being requested, that there is no violation, and that a violation of the FDCPA does not apply as a "legal right" under the FCCPA. However, the Eleventh Circuit has held that where a statute is lacking, specifically in this case with respect to determining what constitutes a misrepresentation of a legal right under section 559.72(9), the court must "refer to other statutes that establish the legitimacy of a debt and define legal rights" See *Cliff v Payco General American Credits, Inc.,* 363 F.3d 1113, 1126 (11th Circuit 2004) (citing Kaplan v Assetcare, Inc., 88 F.Supp.2d 1355, 1363 (S.D. Fla. 2000)).

11. In a nearly identical case, United States District Judge Alan S. Gold adopted this logic, denied a defendant's motion to dismiss and held:

> Plaintiff further alleges that Defendant knew that it did not have a legal right to use such collection techniques. (Compl. ¶ 23.). While these factual allegations also form the basis of Plaintiff's claims under the FDCPA and the TCPA, "to determine whether… a legal right exists, courts must refer to *other statutes* that establish the *legitimacy of a debt and define legal rights*." See, e.g., *Cliff,* 363 F.3d at 1126 (finding that the Higher Education Act, 20 U.S.C. §§ 1001 *et. seq.,* was such a statute as its regulations define the rights of third-party debt collectors, and debtors, when federal student loans are collected).

*Mendez v Phillips & Cohen Associates, LTD* Case No. 09-21467-Civ-Gold/McAliley (S. D. Fla., October 15, 2009)

As the Court held in *Mendez*, courts must refer to other statutes to define legal rights – namely the FDCPA to show a violation of the *FCCPA*. The analysis requires reference to both the FDCPA and the FCCPA. The *Pollock* Court did not did not make the subtle distinction between the interaction of the two statutes and unfortunately, Plaintiff's counsel did not bring *Cliff* to the court's attention in briefing the *Pollock* case. *Mendez*, on the other hand, is based upon binding Eleventh Circuit precedent and should be adopted by this Court. In this case, Defendant has admitted that it knew it was required to disclose that it was a debt collector in messages to consumers and has admitted that the message it left for Plaintiff did not contain that disclosure:

> Q. Okay. But prior to -- but the -- excuse me, let me start again. But the text of the message that was actually transmitted to him did not enclose a -- a disclosure that P&B is a debt collector; is that right?
>
> A. I believe so. It did not.

13

   Q.  Okay.  Does P -- at the time that P&B sent this message, was P&B aware that it was required to disclose in messages to consumers that it is a debt collector?

   A.  Yes.

(Welch Deposition, page 11 line 23 to page 12 line 9)

Thus, Plaintiff has established that Defendant violated the FCCPA because it knowingly violated the FDCPA, by leaving a message which failed to disclose that it was a debt collector, when it knew it did not have a legal right to use this technique in the course of collecting a debt.

12.   Defendant's use of this technique brings up a very important point. Defendant is arguing that it uses messages, which it knows do not contain the disclosure of its name or that it is a debt collector, but only uses them as an introductory communication to a consumer which is followed up by a subsequent message that is only triggered if the consumer presses a certain number on his telephone keypad. Defendant knows, however, that at least in some instances, its dialing system mistakes an answering machine for a live consumer and then leaves a message which Defendant concedes violates the law. Defendant does not have a legal right to engage in such conduct. In *Edwards* the defendant debt collector claimed that it failed to disclose in pre-recorded telephone messages that it was a debt collector because it was afraid that if it did so, and some person other than the consumer heard the pre-recorded message then it would have disclosed the existence of the debt to a third party, in violation of a different section of the FDCPA. The *Edwards* Court rejected this logic and held that a debt collector cannot violate one part of the FDCPA to avoid violating some other part of the FDCPA. This is

similar to the instant case in that the Defendant here has acknowledged that it does deliver unattended pre-recorded messages to consumers which it *knows* omit its name and that it is a debt collector. Defendant relies upon its automated equipment to ensure that the consumer is transferred to a live debt collector or to a further automated messages that does make the required disclosures, but the important point is, Defendant admits that its technology is not completely reliable. It characterizes its technology as being "nearly without fail."  The technology does fail, and it failed with respect to this Plaintiff, and who knows how many other consumers. If Defendant chooses to take advantage of the mass communication techniques afforded by automated computer dialing systems, then it is subject to liability when that technique results in violative communication with the consumer. Defendant does not have the right to violate any portion of the FDCPA in order to save money through automated dialing technology. Defendant has admitted in its deposition that it uses the automated dialing technology, as opposed to a more expensive live human debt collector or written correspondence because of the cost (Welch Deposition, page 33 lines 1-3). Defendant takes the good with the bad. If it wants to save money by using automated dialing technology, it can do so, but when its implementation of that cost-saving measure runs afoul of consumer protection statutes, Defendant is liable for damages. Defendant's technique of delivering the disclosures required by the FDCPA only works if the technology does not fail and if the consumer successfully hears the additional disclosure. Defendant admits that the initial disclosure, the one which Plaintiff received, does not contain the required elements, does violate the FDCPA, and so in leaving that message for Plaintiff, or any consumer, Defendant has knowingly

violated the law and has employed a collection technique which it *knows* it has no legal right to use and violates the law in certain instances.

13. With regard to Count VI of Plaintiff's Complaint, Plaintiff withdraws the frequency allegation in his claim. With respect to the rest of Count VI, Defendant is not entitled to Summary Judgment on Count VI of Plaintiff's Complaint because Defendant again relies on erroneous case law which is not binding on the Eleventh Circuit and again moves for summary judgment on the issue of harassment, which is a jury question, as discussed above with respect to Count IV.

14. Defendant's motion should be denied as Defendant's interpretations of the statutes are erroneous and factual issues remain.

Respectfully submitted,

DONALD A. YARBROUGH, ESQ.
Attorney for Plaintiff
Post Office Box 11842
Fort Lauderdale, Florida 33339
Telephone: (954) 537-2000
Facsimile: (954) 566-2235
donyarbrough@mindspring.com

s/Donald A. Yarbrough
Donald A. Yarbrough, Esq.
Florida Bar No. 0158658

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 10-60931-Civ-Martinez/Brown

JEFFREY D. BIANCHI,

    Plaintiff,

v.

P & B CAPITAL GROUP, LLC,

    Defendant.

_____/

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 27, 2010 I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                              s/Donald A. Yarbrough
                                              Donald A. Yarbrough, Esq.

## SERVICE LIST

Mr. Dale T. Golden, Esq.
Golden & Scaz, PLLC
201 North Armenia Avenue
Tampa, FL 33609
Telephone: 813-251-5500
Facsimile: 813-251-3675

Via Notices of Electronic Filing generated by CM/ECF